**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **PAMELA ROGERS, as Administratrix for the ESTATE OF SHAQUILLE ROGERS,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE COLONY, TEXAS,**<br><br>**AND**<br><br>**CHARLES WOOD,**<br><br>**AND**<br><br>**JOSEPH SHIPP,**<br><br>**Defendants.** | **Civil Action No. ______________**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT**

NOW COMES Pamela Rogers, as Administratrix for the Estate of Shaquille Rogers, Plaintiff, complaining of Defendants the Colony, Texas ("the City"), Charles Wood, and Joseph Shipp, and for cause would show the Honorable Court as follows:

1. On December 18, 2017 Shaquille Rogers was shot and killed by The Colony, Texas Police Department ("CPD") Officers Charles Wood and Joseph Shipp, who acted in an unreasonable and subjective manner.
2. Officers Wood and Shipp fired their weapons repeatedly at an unthreatening Shaquille Rogers, striking and killing him.

**NATURE OF THE ACTION**

3. This is an action brought by the Plaintiff against Defendant, the Colony, Texas ("the City") and its agent and servants, Police Officers Charles Wood and Joseph Shipp for their use of excessive and deadly force under the color of state law resulting in the unlawful shooting death of Shaquille Rogers ("Rogers") in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

4. This action also asserts state law claims for assault and battery against Wood and Shipp.

5. Plaintiff alleges that the The Colony failed to properly train its police officers to deal with mentally incapacitated individuals and also failed to supervise, screen, discipline, transfer, counsel or otherwise properly equip and control officers including those who are known, or who should have been known, to engage in the use of excessive force and/or deadly force.

6. Defendant City's failure to adequately supervise, discipline, and train Defendants Wood and Shipp, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Plaintiffs' unwarranted and excruciating physical and mental anguish and, in the case of Mr. Rogers, death.

7. Defendants Wood and Shipp acted in an objectively unreasonable manner and disregarded the rights of Plaintiff, knowing that the City would approve and/or ratify his actions.

8. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages and the wrongful death of Shaquille Rogers.

## PARTIES

9. Plaintiff, Pamela Rogers, is the duly appointed administrator for the Estate of Shaquille Rogers, deceased, and is an adult individual and a resident of the state of Texas.

10. Plaintiff, Pamela Rogers, is the mother of Shaquille Rogers and is next of kin under Texas intestacy laws.

11. Defendant Officer Wood, is and/or was a police officer with the Colony Police Department. Upon information and belief, he is a resident of the state of Texas.

12. Defendant Officer Shipp, is and/or was a police officer with the Colony Police Department. Upon information and belief, he is a resident of the state of Texas.

13. Defendant the Colony, Texas is a municipality duly organized and existing under the laws of the state of Texas. Defendant is responsible for the funding, budget, policies, operation, and oversight of the Colony Police Department ("CPD"). The CPD is also responsible for preventive, investigative, and enforcement services for all citizens of the Colony, Texas. The Colony may be served via the Office of the City Manager 6800 Main Street, The Colony, TX 75056.

**JURISDICTION AND VENUE**

14. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of the decedent Shaquille Rogers. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

15. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Eastern District of Texas.

**FACTS**

16. Shaquille Rogers was a twenty-four-year-old U.S. Army veteran.

17. On or about December 18, 2019 at approximately 6:00 p.m., Officers Wood and Shipp encountered Shaquille Rogers confused and disoriented inside a home on the 5500 block of Rice Street.

18. The location was a mere two blocks from Rogers' residence.

19. Rogers was disoriented and mumbling to himself when officers arrived on the scene.

20. It was obvious to anyone encountering Rogers that he was in an incapacitated mental state.

21. Nonetheless, instead of securing a perimeter, attempting to de-escalate the incident, and containing and isolating Rogers, Officers Shipp and Wood approached screaming commands with their firearms drawn.

22. Officers Shipp and Wood had the opportunity to attempt to de-escalate the situation and/or use less lethal force such as an ASP/Baton, OC Spray, or an electronic control weapon, but refused to do so.

23. Police Departments across the country train officers on proper techniques for encountering severely mentally incapacitated individuals.

24. Officers Shipp and Wood's actions failed to comport with any reasonable training program.

25. Rogers did not pose an immediate threat of bodily harm to any other person.

26. Nonetheless, Officers Shipp and Wood drew their firearms and discharged striking Rogers and killing him.

27. Shipp and Wood fired at least 12 times, striking Rogers 11 times in the body and once in the back of the head.

**FAILURES OF THE COLONY POLICE DEPARTMENT**

28. Interacting with individuals suffering from mental incapacitation is a common occurrence for police officers.

29. As such, police departments across the county, as well as the International Association of Chiefs of Police have developed policies and training tools to help officers navigate these situations.

30. The model policy developed by the International Association of Chiefs of Police calls for officers to consider the following responses when dealing with a mentally incapacitated person:

    i. Request a backup officer. Always do so in cases where the individual will be taken into custody.

ii. Request assistance from individuals with specialized training in dealing with mental illness or crisis situations (e.g., Crisis Intervention Team (CIT) officers, community crisis mental health personnel, crisis negotiator, or police psychologist).

iii. Contact and exchange information with a treating clinician or mental health resource for assistance, based on law and statute.[1]

iv. Take steps to calm the situation. Where possible, eliminate emergency lights and sirens, disperse crowds, lower radio volume, and assume a quiet nonthreatening manner when approaching or conversing with the individual. Where violence or destructive acts have not occurred, avoid physical contact, and take time to assess the situation. Officers should operate with the understanding that time is an ally and there is no need to rush or force the situation.

v. Create increased distance, if possible, in order to provide the officer with additional time to assess the need for force options.

vi. Utilize environmental controls, such as cover, concealment, and barriers to help manage the volatility of situations.

vii. Move slowly and do not excite the individual. Provide reassurance that officers are there to help and that the individual will be provided with appropriate care.

viii. Ask the individual's name or by what name they would prefer to be addressed and use that name when talking with the individual.

ix. Communicate with the individual in an attempt to determine what is bothering them. If possible, speak slowly and use a low tone of voice. Relate concern for the individual's feelings and allow the individual to express feelings without judgment.

x. Where possible, gather information on the individual from acquaintances or family members and/or request professional assistance, if available and appropriate, to assist in communicating with and calming the individual.

xi. Do not threaten the individual with arrest, or make other similar threats or demands, as this may create additional fright, stress, and potential aggression.

---

[1] Officers in the United States can provide the HIPAA exemption reference number (45 CFR 164.512(j)(1)(i)(A)) for the clinician's reference, if necessary. This exemption states that it is allowable for a covered entity to disclose protected health information to law enforcement if it "is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public."

xii. Avoid topics that may agitate the individual and guide the conversation toward subjects that help bring the situation to a successful conclusion. It is often helpful for officers to apologize for bringing up a subject or topic that triggers the PIC. This apology can often be a bridge to rapport building.

xiii. Attempt to be truthful with the individual. If the individual becomes aware of a deception, they may withdraw from the contact in distrust and may become hypersensitive or retaliate in anger. In the event an individual is experiencing delusions and/or hallucinations and asks the officer to validate these, statements such as "I am not seeing what you are seeing, but I believe that you are seeing (the hallucination, etc.)" are recommended. Validating and/or participating in the individual's delusion and/or hallucination is not advised.

31. The policies, practices, and procedures are designed to defuse the situation while saving lives.

32. Despite knowledge that encountering mentally incapacitated individuals is a difficult situation that officers will regularly be asked to face, The Colony Police Department does not adequately train officers on how to handle these situations.

33. As a result, Officers Wood and Shipp were without the necessary training and tools to deal with Mr. Rogers in a way that protected everyone's safety.

34. This training failure was a moving force behind Officers Wood and Shipp's use of unnecessary and unreasonable deadly force.

**WRONGFUL DEATH ACTION**

35. Plaintiff, Pamela Rogers, as Administratrix of the Estate of Shaquille Rogers, deceased, hereby brings Wrongful Death claims in the Counts *infra* pursuant to 4 Tex. Civ. Prac. & Rem. § 71.001 et seq. ("the Texas Wrongful Death Statute"), on behalf of all those

persons entitled by law to recover damages as a result of the wrongful death of Shaquille Rogers.

36. Pamela Rogers, as mother of Shaquille Rogers, is entitled to wrongful death benefits under the statute.

37. No other action has been brought to recover for Mr. Roger's death under the aforementioned statute.

38. Plaintiff claims all available damages under the Texas Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Shaquille Rogers, would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death.

39. Plaintiff claims damages for payment for all medical bills and/or expenses.

40. Plaintiff claims damages for payment of funeral and burial expenses.

**SURVIVAL ACTION**

41. Plaintiff also brings Survival claims in the Counts described *infra* under the Texas Survival Statute, 4 Tex. Civ. Prac. & Rem. § 71.021 et seq. ("the Texas Survival Statute"), for all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to death, and for emotional distress suffered by Plaintiff's decedent, Shaquille Rogers, from the initiation of the assault upon him until the ultimate cause of his death.

**COUNT I: 42 U.S.C. § 1983 EXCESSIVE FORCE**
**AGAINST DEFENDANTS WOOD AND SHIPP**

42. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

43. Plaintiff would show that Defendants actions on the date at issue in this Complaint deprived Rogers of his constitutional rights.

44. Plaintiff would show that Defendants failed to act as an objectively reasonable officer would have acted in the same or similar circumstances. That is, Defendants, without legal or necessary justification or the need to do so, used excessive and deadly force as described above and killed Shaquille Rogers.

45. Plaintiff would show that Defendants denied Rogers of his right to be free from the use of excessive force in violation of the 4th Amendment to the United States Constitution.

46. The force used by Defendants was objectively unnecessary, excessive and unreasonable under the circumstances, as Rogers did not pose an immediate threat to the safety of Defendants or others.

47. Defendants embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause, and in fact did cause Roger's death and plaintiff to suffer extreme and severe mental and emotional distress, anxiety, terror and agony.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendant Wood and Defendant Shipp pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under 42 U.S.C. § 1988, and any other remedies legally appropriate.

**COUNT II: MUNICIPAL LIABILITY**
**AGAINST DEFENDANT THE COLONY**

48. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

49. The conduct of the individual Defendants as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Shaquille Rogers' constitutional rights.

50. As described *supra*, despite actual knowledge of the need to train officers on interacting with mentally incapacitated individuals, The Colony failed to do so.

51. Model policies offered by the International Association of Police Chiefs provide for a variety of tools for officers to use in avoiding deadly situations with incapacitated individuals. However, the actions by Wood and Shipp ignored all of the potential tools and directly contrasted widely accepted national policing standards.

52. The actions by Wood and Shipp are a product of The Colony's failure to train the officers and the failure to train was a moving force behind the deprivation of Shaquille Roger's constitutional rights.

53. By reason of the aforementioned failures of The Colony, Plaintiff's beneficiary experienced severe pain and suffering and the loss of her son, for which she is entitled to recover damages. The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and death.

54. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and

enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant the City of Arlington pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

## COUNT III - ASSAULT AND BATTERY AGAINST DEFENDANTS WOOD AND SHIPP

55. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.
56. At or about the dates and places alleged herein, Defendants Shipp and Wood, while acting within the course and scope of their duties with The Colony Police Department without provocation, warrant, necessity, or legal justification, assaulted and battered Shaquille Rogers by pointing their guns at him and shooting him, thereby causing Rogers' injuries and death as herein described.
57. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants Wood and Shipp, in an amount in excess of One Million Thousand Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and

wrongful death damages, punitive and exemplary damages, and any other damages legally appropriate at the time of jury trial.

**COUNT IV – VIOLATION OF TITLE II OF THE ADA**
**AGAINST ALL DEFENDANTS**

58. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

59. Shaquille Rogers was suffering from mental health issues at the time of the aforementioned incident.

60. It was obvious and known to the individual Defendants that Mr. Rogers was suffering from mental health issues.

61. The individual Defendants were acutely aware that Mr. Rogers needed medical assistance.

62. Despite this knowledge, the individual Defendants intentionally discriminated against him by denying him participation in or the benefits of services, programs, or activities designed to reduce the mortality rate of police encounters with mentally incapacitated individuals.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants Wood and Shipp, in an amount in excess of One Million Thousand Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages, and any other damages legally appropriate at the time of jury trial.

**COUNT V – VIOLATION OF THE REHABILITATION ACT**
**AGAINST ALL DEFENDANTS**

63. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

64. Shaquille Rogers was suffering from mental health issues at the time of the aforementioned incident.

65. It was obvious and known to the individual Defendants that Mr. Rogers was suffering from mental health issues.

66. The individual Defendants were acutely aware that Mr. Rogers needed medical assistance.

67. Despite this knowledge, the individual Defendants intentionally discriminated against him by denying him participation in or the benefits of services, programs, or activities designed to reduce the mortality rate of police encounters with mentally incapacitated individuals.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants Wood and Shipp, in an amount in excess of One Million Thousand Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages, and any other damages legally appropriate at the time of jury trial.

Respectfully submitted,

**MERRITT LAW FIRM**
*/s/ S. Lee Merritt*
S. Lee Merritt, Esquire
PA ID# 314891
1910 Pacific Ave., Suite 8000
Dallas, TX 75201
p. 888-647-3041
f. 215-545-8805
lee@leemerrittesq.com

**McELDREW YOUNG**
Daniel N. Purtell, Esq.
PA ID# 310376
John J. Coyle, Esq.
PA ID# 312084
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
p. 215-545-8800
f. 215-545-8805
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com
*Admissions Pending*

Dated: December 13, 2019