# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| PAMELA ROGERS, as Administratrix for the ESTATE of SHAQUILLE ROGERS § § § *Plaintiff*, § § v. § § THE COLONY, TEXAS, CHARLES § WOOD, and JOSEPH SHIPP § § *Defendants*. § | Civil Action No.  4:19-cv-00919 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Charles Wood ("Wood") and Joseph Shipp's ("Shipp") Motion for Summary Judgment (Dkt. #34). Having considered the motion and relevant pleadings, the Court finds that the motion should be **GRANTED**.

### BACKGROUND

**I.  Factual Background**

This case arises from the circumstances surrounding the death of Shaquille Rogers ("Rogers"). On December 16, 2019, Plaintiff filed this suit against Defendants alleging violations of 42 U.S.C. § 1983 ("Section 1983"), the Fourth Amendment of the United States Constitution, and state law claims for assault and battery. The events giving rise to this action are as follows:

On December 18, 2017, Rogers was shot and killed by Officers Wood and Shipp, employees of The Colony, Texas. Officers were dispatched after The Colony received 911 calls that an individual had broken through a glass back door of an occupied home and grabbed a knife from the kitchen counter. Officers Wood and Shipp encountered Rogers inside a home on the 5500 block of Rice Street. According to Plaintiff, Rogers allegedly appeared to be disoriented and

in a mentally incapacitated state. The body camera and audio evidence show that Officers Wood and Shipp encountered Rogers, with firearms drawn, screaming the commands: "he's got a knife,"[1] "get back," and "don't move!" When Rogers apparently refused, Officers Wood and Shipp fired their weapons, tragically killing Rogers.

## II.     Procedural History

On December 16, 2019, Plaintiff filed a Complaint against Defendants in the Eastern District of Texas, Sherman Division (Dkt. #1). On May 26, 2020, Defendants filed a Motion for Summary Judgment (Dkt. #34). On June 29, 2020, Plaintiff filed a Response (Dkt. #37). [2] On July 2, 2020, Defendants filed a Reply (Dkt. #39).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or

---

[1] The Court notes that Plaintiff, in her pleadings, does not dispute that Rogers had a knife.
[2] Notwithstanding Plaintiff's untimely filing, the Court ultimately finds that Defendants' Motion should be granted. Accordingly, Defendants' pending Motion to Strike Plaintiff's Untimely Response (Dkt. #38) is denied.

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants argue that: (1) Officers Wood and Shipp are entitled to qualified immunity; (2) Plaintiff's state law claims of assault and battery are barred by Section 101.106 of the Texas Tort

Claims Act ("TTCA"); (3) Officers Wood and Shipp are entitled to official immunity from Plaintiff's state law claims; and (4) Plaintiff cannot recover punitive damages against Officers Wood and Shipp.

As an initial matter, the Court notes that Plaintiff did not respond to Defendants' request for dismissal of her punitive damages claim. Therefore, the Court concludes that the claim for punitive damages should be denied.[3] The Court now turns to address each of Plaintiff's remaining claims.

**I.      Excessive Force Claim**

To establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of its discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly

---

[3] Pursuant to Local Rule CV-7(d) of this district, a party's failure to oppose a motion in the manner prescribed creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.

established statutory or constitutional rights of which a reasonable person would have known." *Id*. The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that [a] "reasonable official would have understood that what he is doing violates that right." *Creighton,* 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court instructs courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

    A. ***Was a Constitutional Right Violated?***

Plaintiff alleges that Defendants violated Rogers's Fourth Amendment rights by using deadly force even though Rogers posed no threat to the officers or others upon their arrival. To prevail on an excessive-force claim, Plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). "The second and third elements collapse into a single objective reasonableness inquiry, guided by the following *Graham* factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (citation omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Turning to the present case, Plaintiff's allegations clearly satisfy the injury prong. Here, there is no dispute that Rogers was fatally shot by Defendants. Thus, the only question for the Court to address is whether Defendants' conduct was objectionably unreasonable.

In excessive-force claims, the reasonableness of an officer's conduct depends on "the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* As such, the Court's inquiry is "whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Cooper*, 844 F.3d at 522 (alterations in original) (quoting *Graham*, 490 U.S. at 397).

Turning to the present case, Defendants contend that the body camera and audio evidence submitted to the Court expressly show that a reasonable police officer could have believed the actions of Officers Wood and Shipp were reasonable under the circumstances. Defendants further allege that Rogers posed an immediate threat to the safety of the officers and others. Specifically, Defendants contend that upon arrival at the scene of the incident, Officers Wood and Shipp entered the home and immediately identified themselves. Seconds later, as alleged by Defendants, Rogers came towards them, brandishing a very large knife. Rogers, Defendants maintained, was told several times to "drop the knife" and "don't move." Rogers refused to drop the knife, continued towards the officers, and was shot and killed. In her response, Plaintiff contends that the evidence

before the Court demonstrates that Rogers posed no threat to the officers or others upon their arrival. After review of the body camera and audio evidence, the Court disagrees.

Notwithstanding minor factual differences, the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1, 1 (1985) (citations omitted) is instructive. In *Garner*, a Memphis police officer shot and killed appellee-respondent's son. *Id*. The decedent, after being told to halt, fled over a fence at night in the backyard of a house he was suspected of burglarizing. *Id*. Despite being reasonably sure the suspect was unarmed, the officer used deadly force. *Id*. The father subsequently brought an action pursuant to 42 U.S.C. § 1983 for asserted violations of his son's constitutional rights.

Instructive here is the Court's explanation regarding deadly force. The Court explains that it is unreasonable for an officer to "seize an *unarmed*, non-dangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11. Conversely, an officer's use of deadly force is not constitutionally unreasonable where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others. *Id*. Put simply, deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.

Applying these principles to the facts of this case, the evidence before the Court readily shows that Defendants had probable cause to believe that Rogers posed a threat of serious physical harm to the officers or others. Even further, the Court finds that Officers Wood and Shipp provided a sufficient warning before they used deadly force. Unlike the suspect in *Garner*—who was unarmed—Rogers can be seen approaching officers with a large knife in his hand, and the officers can be heard telling Rogers, "don't move." *Garner*, 471 U.S. 1 at 11–12 ("if the suspect threatens the officer with a weapon and some warning has been given, deadly force may be used if

necessary"). Indeed, the evidence confirms that The Colony received 911 calls that an individual had broken through a glass back door of an occupied home and grabbed a knife from the kitchen counter. Moreover, on review of the body camera and audio evidence, an officer can be heard stating, "he's got a knife." Seconds later, Rogers appeared in the hallway, apparently approaching Defendants, with a large kitchen knife in his left hand. At this point, one of the officers commanded Rogers "not to move" and to "get back." Consequently, Rogers refused and was fatally shot. The Court notes that burglary alone is not enough to justify the use of deadly force, but considering the other circumstances confronting the officers in this case—as outlined above—the Court finds that Officers Wood and Shipp had probable cause to believe that Rogers posed a threat of serious physical harm, either to them or to others. Indeed, Plaintiff presents no conflicting evidence for a reasonable jury to find that Officers Wood and Shipp lacked such probable cause.

Moreover, the Court is not persuaded that Officers Wood and Shipp had reason to suspect that Rogers had a mental illness or that Rogers did in fact have a mental illness. But even if Plaintiff presented such evidence (though she did not), this knowledge alone does not foreclose officers from protecting themselves and the general public. *See e.g.*, *Bates ex rel. Johns v. Chesterfield Cty.*, 216 F.3d 367, 372 (4th Cir. 2000); *see Menuel v. City of Atlanta*, 25 F.3d 990 (11th Cir. 1994) (upholding the use of deadly force when officers tried to apprehend a mentally ill man who had a knife and was hiding behind a door). Therefore, there remains no genuine issue of material facts on the question of whether Rogers's constitutional right was violated. Accordingly, judging from the perspective of a reasonable officer on the scene and considering the specific circumstances in this case, Officers Wood and Shipp are entitled to qualified immunity.

Having held that no constitutional right was violated, the Court need not address prong two; that is, whether the constitutional right in question was clearly established. Accordingly, Defendants' Motion for Summary Judgment on this issue should be granted.

## II. Assault and Battery Claims

Next, Plaintiff brings state law tort claims of assault and battery against Defendants. The Court finds that Plaintiff's state law tort claims against Defendants are barred. As a general rule, the TTCA bars any suit or recovery by a plaintiff against any individual employee of a governmental unit regarding the same subject matter if it could have been brought under this chapter against the governmental unit. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(a). "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit. *See id*. Indeed, the purpose of the TTCA is to protect employees performing governmental functions within the scope of their employment. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 752–53 (Tex. 2017). The Texas Supreme Court in *Wetherbe* made clear that a defendant is entitled to dismissal under section 101.106 if "the plaintiff's suit is (1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the [TTCA]." *Id*.; *See also Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 848 (Tex. 2018).

Turning to the present case, Defendants acted within the scope of their employment as defined by Texas courts when they investigated a home invasion and fatally shot Rogers. "Scope of employment" is defined as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Wetherbe*, 517 S.W.3d 748 at 752 (quoting

9

TEX. CIV. PRAC. & REM. CODE § 101.001(5)). As *Wetherbe* notes, nothing in this provision or the statutory definition of "scope of employment" suggests subjective intent is a necessary component of the scope of employment analysis. *Id*. at 752–53. Rather, the TTCA focuses on "performance ... of the duties of an employee's office or employment," which calls for an objective assessment of whether the employee was doing his job when he committed an alleged tort, not his state of mind when he was doing it. *Id*. at 753 (quoting TEX. CIV. PRAC. & REM. CODE § 101.001(5)). The scope-of-employment analysis, therefore, remains fundamentally objective and the question becomes whether there is a connection between the employee's job duties and the alleged tortious conduct. *Id*. The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to his job responsibilities. *See Melton v. Farrow*, No. 03-13-00542-CV, 2015 WL 681491, at *3 (Tex. App.—Austin Feb. 10, 2015, pet. denied) ("Texas appellate courts have consistently held that acts may still be within the scope of the employee's duties even if the specific conduct that forms the basis of the suit was wrongly or negligently performed or driven by personal animus."); *Anderson v. Bessman*, 365 S.W.3d 119, 125–26 (Tex. App.—Houston [1st Dist.] Nov. 20, 2011, no pet.) ("So long as it falls within the duties assigned, an employee's conduct is within the scope of employment, even if done in part to serve the purposes of the employee or a third person."). Stated another way, an act "is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Wetherbe*, 517 S.W.3d at 754.

Consistent with Texas courts' longstanding approach to this issue, the Court is not persuaded that Defendants in this case engaged in any course of conduct unrelated to their job as police officers. Further, the Court is not persuaded that Defendants in this case pursued an

independent course of conduct outside the scope of their employment. Here, the facts are undisputed that Officers Wood and Shipp were dispatched after The Colony received 911 calls indicating that an individual had allegedly broken through a glass back door of an occupied home and grabbed a knife from the kitchen counter. Moreover, the body camera video and audio evidence show that Officers Wood and Shipp encountered Rogers, with firearms drawn, screaming the commands: "he's got a knife," "get back," and "don't move!" When Rogers refused, Officers Wood and Shipp fired their weapons, and tragically killed him. Indeed, the main purpose of Section 101.106 was to discourage or prevent recovery against an employee. *See id*. Consequently, this provision favors the expedient dismissal of governmental employees when suit should have been brought against the government.

This Court shares the sentiments of the Texas Supreme Court that the line between the professional and personal is sometimes difficult to discern, as people typically do not carefully or consciously delineate between the two. *See id*. at 755. However, the fundamental inquiry is not whether Defendants in this case did their job well or poorly, or whether they did their job selfishly or altruistically, but simply whether they were doing their job. *Id*. The Court is persuaded that they were. Therefore, because Defendants were objectively acting within the scope of their employment as Colony Police Officers, Plaintiff's battery and assault claims are barred.

Even if Plaintiff's state law claims are not barred, the Court, having held that Defendants' conduct was reasonable under the circumstances, finds that Defendants are entitled to official immunity under Texas law. *See Rockwell v. Brown*, 664 F.3d 985, 993–994 (5th Cir. 2011).[4] Official immunity protects governmental employees "from suit arising from the performance of

---

[4] The Court notes that Plaintiff presents no argument in response to Defendants' official immunity assertion. Nonetheless, the Court finds that Defendants are entitled to official immunity.

11

their (1) discretionary duties in (2) good faith as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (citations omitted). "The good faith test" applied by Texas law in determining official immunity is evaluated under substantially the same standard used for qualified immunity determinations in Section 1983 actions. *Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007) (citations omitted). Unlike the qualified immunity standard, however, Texas's good-faith test focuses not on whether the right alleged to have been violated is clearly established, but solely on the objective legal reasonableness of the officer's conduct. *See Chambers*, 883 S.W.2d at 656–57. Moreover, an official acts within the scope of his authority if he is discharging the duties generally assigned to him. *Id*. at 658.

Here, there is no dispute—and indeed no evidence to the contrary—that Defendants were performing a discretionary act in attempting to apprehend Rogers after receiving a phone call that a suspect had broken into a home and grabbed a knife. Furthermore, evidence shows that Defendants were acting within the scope of their authority, as each officer responded to a call that a burglary had been committed, arrived on the scene, and attempted to subdue the suspect. This conduct was objectively reasonable in light of evidence that, at the time Officers Wood and Shipp entered into the house, they knew only that a stranger had broken through a glass door, that he grabbed a knife, and that it was possible that a resident of the home was still inside. Lastly, prior to firing their weapons, Rogers refused commands to "drop his weapon" and "don't move."

As the *Chambers* Court noted, "[w]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." 883 S.W.2d at 656. In this case, the Court is persuaded that Officers Wood and Shipp believed their conduct was lawful. What is more, the Court finds their conduct was objectively reasonable. As such, Defendants are entitled to

official immunity from suit under Texas law, and Plaintiff's assault and battery claims against Defendants should be dismissed. Accordingly, Defendants' Motion for Summary Judgment on this issue should be granted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #34) is **GRANTED**, and Plaintiff's claims are **DISMISSED with prejudice** in their entirety.

**SIGNED this 28th day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE